IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GABRIELLA TILLERY, as Guardian to G.M. and C.M.,** * * * | |
| **Plaintiff,** * * | |
| v. * * | Civil Case No. SAG-23-00402 |
| **UNITED STATES MARSHALS SERVICE,** *et al.,* * * * | |
| **Defendants.** * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Without legal counsel, Plaintiff Gabriella Tillery ("Plaintiff"), in her capacity as guardian to her two minor children, G.M. and C.M., filed this action against a number of federal and state law enforcement agencies and their employees, asserting claims arising out of the shooting death of her children's father, Michael Marullo. ECF 1. This Court appointed pro bono counsel to represent Plaintiff, and her attorney filed an Amended Complaint, naming eighteen defendants and a total of sixty "John Does" and "Richard Roes." ECF 10. The following Defendants have each filed motions to dismiss the Amended Complaint: (1) Defendants Baltimore County and Baltimore County Police Department (collectively, "the Baltimore County Defendants"), ECF 38; (2) Defendants Lower Chichester Township, Lower Chichester Township Police Department,[1] and Timothy McBride (collectively "the Lower Chichester Defendants"), ECF 45; (3) Defendants Office of Attorney General for Maryland; Maryland State Police; and Maryland Transportation

---

[1] There appears to be a topographical error in the Amended Complaint, which spells Chichester as "Chinchester" when naming the police department as a defendant. This Court will use the correct spelling of Chichester rather than "Chinchester."

1

Authority Police (collectively, "the State Defendants"), ECF 49; (4) Defendant Baltimore City Police Department, ECF 54; and (5) Defendant Baltimore City,[2] ECF 55.[3] Plaintiff opposed two of the five motions, ECF 46, 50,[4] and the Lower Chichester Defendants filed a reply, ECF 53. Plaintiff also filed, at this Court's request, supplemental filings explaining her position with respect to the statute of limitations. ECF 58, 59. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, all of the motions to dismiss will be granted, although the claims will be dismissed without prejudice as to all defendants except Baltimore City.

I.  **FACTUAL BACKGROUND**

The facts described herein are derived from Plaintiff's Amended Complaint and are taken as true for purposes of this motion. ECF 10. G.M. and C.M. are the minor children of the decedent, Michael Marullo, and were toddlers in 2020. *Id.* at 2, 7. Until he resigned in December, 2019, Marullo served as a correctional officer in Baltimore County. *Id.* at 7. On February 11, 2020, when picking up his children from daycare in Marcus Hook, Pennsylvania, Marullo got into an altercation with Douglas McDonald, the owner of a business near the daycare building. *Id.* at 7-8. To defend himself from a physical attack, Marullo fired two shots—one in the air and one in the ground—using his lawfully obtained and carried firearm. *Id.* Marullo then dropped his children off with family and returned to his home in Baltimore, Maryland. *Id.* at 8.

---

[2] This Court's reference to Baltimore City encompasses the Mayor and City Council of Baltimore.

[3] The docket reflects that a number of federal agency defendants, the Capital Area Regional Fugitive Task Force, and Delaware County entities were also named and served in this action but have not responded. ECF 26. Because this Court is dismissing the Amended Complaint and because some of the identified deficiencies (including improper group pleading and failure to tie relevant acts to particular entities) are equally applicable to those other defendants, this Court will not take further action to secure a response to the Amended Complaint or a motion seeking default.

[4] These oppositions purport to incorporate a "Memorandum of Law," but Plaintiff did not attach a memorandum to any of her filings.

"Upon information and belief," McDonald filed a criminal report in Lower Chichester County Police Department against Marullo. *Id.* at 8. Defendant Officer Timothy McBride, an officer with the Defendant Lower Chichester Township Police Department, then swore an affidavit for probable cause to arrest Marullo. *Id.* at 6. In the application, McBride identified "a number of possible charges," however, the issuing judge only charged simple assault, a misdemeanor in the second degree. *Id.* at 8. The warrant that issued, however, used the extradition code from the National Crime Information Center ("NCIC") for a felony with full extradition. *Id.* at 9.

The day after the altercation, the Defendant Capital Area Regional Fugitive Task Force arrived at Marullo's apartment to effect the arrest. *Id.* When Marullo exited the apartment with his hands up, officers fatally shot him, and also shot each other in the crossfire. *Id.* Marullo did not fire any rounds prior to or during the attempted arrest. *Id.*

## II.     LEGAL STANDARDS

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; see *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ..."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Id.* at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the

factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.   ANALYSIS

In general, Plaintiff's Amended Complaint engages in improper group pleading, does not specify which claims are being asserted against which of the many listed defendants, and does not provide the numbered paragraphs required by Fed. R. Civ. P. 10(b). In addition, Plaintiff has sued a number of federal and state law enforcement agencies without making any specific allegations that any employees of those agencies engaged in any relevant acts.[5] While this Court presumes that the agencies identified might include all of the participants in the Capital Regional Area Fugitive Task Force, that assertion is missing from the Amended Complaint. The Amended Complaint will therefore be dismissed without prejudice to allow Plaintiff to clarify which counts are being asserted against which defendants and why, using the appropriate format for a federal complaint. To aid in that effort, however, this Court rules on many of the issues raised in the motions to dismiss as follows, which should narrow the scope of any Second Amended Complaint and the future challenges that might ensue:

#### A.   The Lower Chichester Defendants

Plaintiff's Amended Complaint fails to assert a plausible claim against McBride, Lower Chichester Township, or the Lower Chichester Township Police Department ("LCTPD"). There are simply no allegations of any wrongdoing by any of those entities. The closest is an allegation

---

[5] This Court notes that some information identifying at least some persons and entities involved in this incident can be found in public news sources about the shooting. In comparison to that widely available press coverage, the Amended Complaint is notably devoid of specific factual allegations or identification of individual actors. An attempt to be overinclusive, naming defendants and entities who may have no involvement whatsoever, is not helpful in the context of pleading a viable, factually supported claim.

that the arrest warrant itself (not the application alleged to have been filed by McBride) contained an erroneous NCIC code, but the Amended Complaint does not specify who or what was responsible for that error, nor does it suggest that the error was intentional by any party. The Amended Complaint only alleges that the judge, who is not named as a defendant, limited the charges from the "number of charges" proposed by McBride to a single second-degree misdemeanor. There is no suggestion that McBride "knowingly and intentionally, or with reckless disregard for the truth, either made false statements in [his] affidavits or omitted facts from their affidavits, thus rendering the affidavits misleading" and violative of the Fourth Amendment. *Evans v. Chalmers,* 703 F.3d 636, 650 (4th Cir. 2012). There can be no Eighth Amendment claim by Marullo because that amendment applies after a conviction and not in the context of arrest. *Compare Tennessee v. Garner*, 471 U.S. 1, 7–22 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard), *with Whitley v. Albers*, 475 U.S. 312, 318–326 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard). Similarly, the Fourteenth Amendment's Due Process Clause is not properly used to evaluate pretrial actions of law enforcement officials. *See Safar v. Tingle,* 859 F.3d 241, 245 (4th Cir. 2017) ("Compared to the 'more generalized notion' of due process, the Fourth Amendment 'provides an explicit textual source of constitutional protection against [unreasonable seizures and arrests],' and 'define[s] the 'process that is due' for seizures of persons or property in criminal cases.'") (internal citations omitted). Ultimately, Plaintiff has not alleged that McBride committed any constitutional violation by applying for an arrest warrant in the course of his Pennsylvania investigation.

As to the Township, the sole allegation is that it "assumes the risks incidental to the maintenance of a police force and the employment of police officers." ECF 10 at 5. There is no

allegation of any policy, custom, or practice leading to Plaintiff's injury. Similarly, as to the LCTPD, the Amended Complaint alleges, without any specificity, that it is "liable for the acts of members of its police force." *Id.* There are no allegations of direct actions by the LCTPD or any premise for a *Monell* claim. To the extent that Plaintiff claims that the Township and LCTPD failed to properly supervise McBride in violation of 42 U.S.C. § 1983, such claim fails because Plaintiff has not alleged "more than mere supervision." *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020). Ultimately, without any factual allegations supporting a viable claim against any of the Lower Chichester Defendants, the claims against them must be dismissed.

### B. Baltimore City

All of Plaintiff's claims against Baltimore City are also subject to dismissal. Although the Amended Complaint is not clear as to the basis for the City's alleged liability, it appears to rest on the assumption that one or more Baltimore City Police Department ("BPD") officers were involved in the shooting of Marullo. Assuming that is Plaintiff's theory, any state law claims asserted against the City would rest on a theory of respondeat superior for the officers' actions. *Nicholson v. Balt. Police Dep't*, Civ. No. DKC 20-3146, 2021 WL 1541667, at *10 n.9 (D. Md. Apr. 20, 2021). However, "[t]o impose respondeat superior liability, the defendant must have an agency or employment relationship with the alleged wrongdoer." *Id.* (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 392 (1982). No such relationship exists between the City and BPD because BPD was not a city agency at the time of these events. *See, e.g.*, *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 644 (D. Md. 2014) ("[T]he City does not employ Baltimore police officers and is not liable for their conduct under state law." (citing *Clea v. Mayor & City Council of Balt.*, 541 A.2d 1303, 1306–07 (Md. 1988))). Accordingly, all state law and state constitutional claims against the City are dismissed with prejudice. *See Nicholson*, 2021 WL 1541667, at *10

(dismissing all state law tort and constitutional claims against the City); *Hernandez v. Lloyd*, Civ. No. JRR-23-1016, 2024 WL 1329297, at *5 (D. Md. Mar. 28, 2024) (same).

For similar reasons, the federal constitutional claims must be dismissed against the City with prejudice. "Section 1983 allows individuals to sue any person who violates their constitutional rights while acting under the color of law." *Estate of Anderson*, 6 F. Supp. 3d at 644 (citing 42 U.S.C. § 1983). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court made it possible to sue local governments under Section 1983 based on the unconstitutional actions of individual defendants, but only if the violations occurred while executing a local government policy or custom. Thus, when suing a municipality, a plaintiff's claims under Section 1983 for unconstitutional conduct can only be brought under the standard set forth in *Monell*. *Nicholson*, 2021 WL 1541667, at *10.

To establish a viable *Monell* claim, a plaintiff must allege "both the existence of a constitutional violation on the part of the police officer and that any constitutional violation was proximately caused by a policy, custom, or practice of the defendant municipality." *Id.*; *see also Spell v. McDaniel*, 824 F.2d 1380, 1387–88 (4th Cir. 1987). This Court has repeatedly observed that the City does not sufficiently control the BPD for municipal liability under *Monell* to attach. *See, e.g.*, *Nicholson*, 2021 WL 1541667, at *10 ("Put simply, because the BPD is not controlled, managed, or supervised by the City, Plaintiff cannot satisfy the second requirement for bringing a *Monell* claim under § 1983."); *Estate of Anderson*, 6 F. Supp. 3d at 646 ("[A] § 1983 claim cannot be brought against the City for Baltimore police officer conduct because it does not sufficiently control the BPD and cannot be considered to employ Baltimore police officers."); *Fish v. Mayor*

*& City Council of Balt.*, Civ. No. CCB-17-1438, 2018 WL 348111, at *3 (D. Md. Jan. 10, 2018) ("This court repeatedly has found the City is not responsible for officer conduct under § 1983 because BPD officers are not employees of the City as a matter of law."). In short, the City "has no power" over the BPD, so any *Monell* claim against the City necessarily fails. *Middleton v. Balt. City Police Dep't*, Civ. No. ELH-20-3536, 2022 WL 268765, at *15 (D. Md. Jan. 28, 2022) (quoting *Mayor & City Council of Balt. v. Clark*, 944 A.2d 1122, 1130 (Md. 2008)).[6]

### C. Baltimore City Police Department

Initially, BPD is entitled to sovereign immunity from state common law and constitutional claims. *See, e.g.*, *Balt. Police Dep't. v. Cherkes,* 780 A.2d 410, 418 (Md. Ct. Spec. App. 2001) (determining that BPD is "an agency of the State and therefore enjoys the common law sovereign immunity from tort liability of a State agency"); *Nicholson,* 2021 WL 1541677, at *9 (dismissing all state and common law claims, including state constitutional claims, against BPD as barred by sovereign immunity); *Corbitt v. Balt. Police Dep't,* Civ. No. RDB-20-3431, 2021 WL 3510579, at *7 (D. Md. Aug. 10, 2021) ("Accordingly, on numerous occasions, this Court has held that the Baltimore Police Department enjoys State sovereign immunity from actions for damages based on state common law torts or state constitutional torts.") (internal quotation marks and citations omitted). BPD cannot therefore be sued for the claims in Counts 3–6 and 8 of the Amended Complaint.

With respect to a federal constitutional claim against BPD, Plaintiff's Amended Complaint does not contain sufficient factual allegations to survive dismissal. As described earlier herein, a municipality can only be found liable where there is an unconstitutional policy, custom, or practice

---

[6] In the 2022 elections, Baltimore City voters voted to make the BPD a city agency, but that change has not yet been effected and certainly was not effected as of the time of this incident back in 2020.

that causes a violation of the plaintiff's constitutional rights. *Monell,* 436 U.S. at 690; *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). The unconstitutional policy or custom can be shown by identifying a formal policy, regulation, or ordinance, citing an express decision of an official who possesses final policymaking authority, pointing to a failure to train employees that amounts to "deliberate indifference" to the constitutional rights of citizens, or demonstrating a "persistent and widespread practice" of unconstitutional conduct evidencing a "custom or usage" of the municipality. *Lytle*, 326 F.3d at 471 (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Even a plaintiff who identifies such a policy or custom must prove that the policy or custom was the "moving force" behind the violation that caused the injury to the plaintiff. *Spell*, 824 F.2d at 1387 (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

In her Amended Complaint, Plaintiff falls well short of pleading a plausible *Monell* claim. She identifies no BPD policies other than BPD Policy 1007, which as Plaintiff describes it, relates to the standards for obtaining warrants. ECF 10 at 11. Because the warrant for Marullo was obtained in Pennsylvania, *id.* at 8, that policy did not cause the injury alleged here. Plaintiff has not identified any policymaking decisions by policymaking officials and has not identified any particular training deficiency applicable to the officers involved in this incident (since she has not identified any such officers). She made general reference to a 2016 Department of Justice report about the BPD, which identified issues and detailed areas needing improvement. *Id.* at 11. But Plaintiff did not identify any specific content within the report pertinent to this case.

The Amended Complaint identifies two incidents in which citizens were shot during the service of warrants by Baltimore County police officers, but no such incidents involving BPD officers. *Id.* at 10. On those facts, there can be no inference of deliberate indifference on the part of the BPD. Similarly, Plaintiff has alleged no persistent or widespread practice by the BPD, as

10

she cites no prior incidents involving BPD officers and only two incidents total, which are neither "persistent" nor "widespread." In sum, Plaintiff has not alleged a sufficient factual predicate for a plausible *Monell* claim against the BPD.

### D.  Baltimore County Defendants

Initially, the two Baltimore County Defendants, "Baltimore County" and the Baltimore County Police Department ("BCPD"), contend that Plaintiff's claims are barred by limitations or by res judicata. Those assertions are unavailing. Because Plaintiff stands in the shoes of two minor defendants who were toddlers in 2020, they have not yet reached the age of majority and thus their limitations period has been tolled. *See Parker v. Hamilton,* 160 A.3d 615, 619 (Md. 2017) (noting that Md. Code Ann., Cts. & Jud. Proc. § 5-201 tolls the running of the three-year limitations period during the minority of a potential plaintiff). And this Court dismissed Plaintiff's 2021 action, also filed by Plaintiff on behalf of her minor children, without prejudice. *See* Civ. No. 1:21-cv-01067, ECF 52. "Dismissals without prejudice do not bar subsequent suits by *res judicata*." *Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 473 (4th Cir. 1993).

The Baltimore County Defendants do correctly assert, however, that they are improperly named in the Amended Complaint. The applicable charter for Baltimore County provides that the county must be named as "Baltimore County, Maryland" in all actions. BALT. CNTY. CHARTER § 103. As for the Baltimore County Police Department, as a department within Baltimore County, it does not constitute an independent legal entity that may be sued in its own name. *See Strebeck v. Balt. Cnty. Police Dep't*, Civ. No. JFM-05-2580, 2005 WL 2897932, at *1 (D. Md. Oct. 17, 2005) ("Neither the Baltimore County Police Department nor the Baltimore County Council are *sui juris*. The Police Department is simply an agency of Baltimore County . . . ."); *Borkowski v. Balt. Cnty.*, 414 F. Supp. 3d 788, 804 (D. Md. 2019) ("[T]he Baltimore County Police Department

11

... [is not] *sui juris*. The Police Department is simply an agency of Baltimore County[.]") (quoting *James v. Frederick Cty. Pub. Schs.*, 441 F. Supp. 2d 755, 758 (D. Md. 2006)). Therefore, Plaintiff's claims against the Baltimore County defendants must be dismissed.

Even had the County been properly named, Plaintiff has made no allegations that would render the County liable for a federal constitutional violation. As noted, "[t]he doctrine of respondeat superior does not apply in actions under 42 U.S.C. § 1983." *Pearson v. Simms*, 345 F. Supp. 2d 515, 520 (D. Md. 2003). Rather, an official or supervisor can be liable under § 1983 only if he or she has, with knowledge or deliberate indifference, permitted an unconstitutional policy, custom, or practice to prevail. *Monell,* 436 U.S. at 691. Although the two prior incidents Plaintiff sets out in her complaint did involve BCPD officers, as discussed above, just two incidents over an eight-year span do not show a persistent and widespread practice of unconstitutional conduct.

Additionally, Plaintiff's state law claims against the County have two distinct problems. First, the Baltimore County Defendants correctly note that the Plaintiff in this case represents the interests of Marullo's two minor children, not the interests of his estate. Maryland law allows the minor children to assert a wrongful death claim for the harms they suffered from the loss of their parent. *Glove Am. Cas. Co. v. Chung*, 547 A.2d 654, 658–61 (Md. Ct. Spec. App. 1988), *vacated on other grounds*, 589 A.2d 956 (Md. 1991). But they are not permitted to assert tort claims as an agent of Marullo, so their claims of "conscious pain and suffering," "assault and battery," and "negligence" must be dismissed against all defendants because the minor children are not the proper personal representatives of Marullo's estate. *See id.*

Second, even had the County been properly named, it would be immune from direct suit for state law tort claims, although it would have to indemnify its employees in appropriate circumstances. As Judge Hollander of this Court recently explained:

12

[C]ounties in Maryland enjoy governmental immunity in negligence actions when the conduct on which the suit is based is governmental, not proprietary. *Pavelka v. Carter*, 996 F.2d 645, 648 (4th Cir. 1993); *see Devi v. Prince George's County*, DKC-16-3790, 2017 WL 3592452, at *2 (D. Md. Aug. 21, 2017) ("[M]unicipalities are generally immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts") (citing *DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354, 369-70 (1999); *Nam v. Montgomery County*, 127 Md. App. 172, 182, 732 A.2d 356, 362 (1999)).

Title 5, Subtitle 3 of the Courts and Judicial Proceedings Article of the Maryland Code is captioned "Local Government Tort Claims Act". C.J. § 5-303(b)(1) provides that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Under C.J. § 5-303(b)(2), a local government is barred from "assert[ing] governmental or sovereign immunity to avoid the duty to defend or indemnify an employee," as established in C.J. § 5–303(b)(1). *See Balt. Police Dep't v. Cherkes*, 140 Md App. 282, 318, 780 A.2d 410, 431 (2001).

C.J. §§ 5–303(d) and (e) expressly reserve the preexisting common law and statutory defenses and immunities of local governments and their employees, and the right of the local government to assert such defenses and immunities, as follows:

> (d) Notwithstanding the provisions of [§ 5-303(b),] this subtitle does not waive any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by an employee of a local government.
> (e) A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle.

"With the enactment of the LGTCA, the [Maryland] Legislature sought to provide 'a remedy for those injured by local government officers and employees, acting without malice in the scope of their employment, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts.'" *Rios v. Montgomery County*, 157 Md. App. 462, 475-76, 852 A.2d 1005, 1012 (2004) (quoting *Ashton*, 339 Md. at 108, 660 A.2d at 466), *aff'd*, 386 Md. 104, 872 A.2d 1 (2005). Of relevance here, the LGTCA does not permit a plaintiff to sue the local government directly. Rather suit is brought against the employee, and the local government is responsible for payment of a judgment. *Beall*, 446 Md. at 77, 130 A.3d at 423; *see Hansen v. City of Laurel*, 420 Md. 670, 679-80 n.5, 25 A.3d 122, 127 n.5 (2011) (stating that the LGTCA "does

13

> not waive the limited immunity enjoyed by local governments ...."); *Williams v. Maynard*, 359 Md. 379, 394, 754 A.2d 379, 388 (2000) (stating that "the LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments"); *Hous. Auth. v. Bennett*, 359 Md. 356, 357-58, 754 A.2d 367, 367-68 (2000) (superseded in part by statute on other grounds); *see also Gray-Hopkins v. Prince George's County*, 309 F.3d 224, 234 (4th Cir. 2002) ("Under Maryland law, a county 'is immune from liability for tortious conduct committed while the entity was acting in a governmental capacity.'") (quoting *DiPino*, 354 Md. at 47, 729 A.2d at 370); *Pavelka*, 996 F.2d at 649 ("The LGTCA does not waive local governmental immunity when a local governmental entity is sued in its own capacity"); *Dawson v. Prince George's County*, 896 F. Supp. 537, 539 (D. Md. 1995) (stating that local government is financially responsible for a judgment against an employee, but the LGTCA "does not create liability" on the part of the municipality).
>
> Therefore, the LGTCA does not permit plaintiffs to name the County directly in a common law tort suit. *See, e.g.*, *Devi*, 2017 WL 3592452, at *2; *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 378 (D. Md. 2011); *Martino v. Bell*, 40 F. Supp. 2d 719, 722 (D. Md. 1999) Instead, C.J. § 5-303(b) requires the County to indemnify its employees for damages resulting from their tortious acts.

*Doe v. Community College of Balt. Cnty.,* 595 F.Supp.3d 392, 411–12 (D. Md. 2022).

To the extent Plaintiff seeks to reassert a claim directly against the County, then, she must allege facts to support a *Monell* claim premised on a federal constitutional violation, or assert other claims not precluded by the issues described herein.

### E. The State Defendants

The Maryland State Police, Maryland Transportation Authority Police, and the Office of the Attorney General for Maryland (collectively, "the State Defendants") have filed a motion to dismiss that Plaintiff has not opposed. ECF 49. That motion correctly notes that the Eleventh Amendment affords states immunity from suits filed in federal courts. *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 479 (4th Cir. 2005) (quoting *Regents of Univ. of California v. Doe,* 519 U.S. 425, 429 (1997). The immunity extends to "state agents and state instrumentalities." *Id.* The Maryland State Police and Maryland Transportation Authority Police are both principal departments of the Maryland State government, not independent entities. MD.

Code. Ann., State Gov't § 8-201(b)(19)–(20); Md. Code Ann., Pub. Safety, § 2-201. Similarly, the Attorney General for Maryland is an instrumentality of the Maryland State government. *See* Md. Code. Ann., State Gov't § 6-106(a) ("[T]he Attorney General has general charge of the legal business of the State."); *Doyle v. Hogan*, 1 F.4th 249, 256–57 (4th Cir. 2021) (concluding that the Attorney General for Maryland is immune from suit). As a result, the State Defendants cannot be sued in this Court.[7]

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss, ECF 38, 45, 49, 54, 55, are GRANTED. The claims against Baltimore City are dismissed with prejudice, and the remainder of the claims will be dismissed without prejudice. Plaintiff will be afforded sixty days to move for leave to file an amended complaint in accordance with this opinion. A separate Order follows.

Dated:  July 31, 2024

/s/
Stephanie A. Gallagher
United States District Judge

---

[7] This Court declines to dismiss these claims with prejudice because Plaintiff might be able to assert claims against the State Defendants in state court, should she be able to allege facts to support such claims. She simply cannot bring those claims in this Court.